No. 23-3548

United States Court of Appeals for the Eighth Circuit

---

Estella L. Morris,
Plaintiff – Appellant

v.

Department of Veterans Affairs, Denis McDonough, Secretary,
Defendant - Appellee

---

Appeal from the United States District Court
Eastern District of Arkansas

District Court Case Number 4:21-cv-00406-JM

The Honorable James M. Moody Jr.
United States District Judge

---

The Appellant's Brief

---

Terrence Cain
Ark. Sup. Ct. Reg. No. 99128
208 Brown Street
Little Rock, Arkansas 72205-5841
Telephone 501.664.7512
Email terrencecain@windstream.net

## Summary of the Case

Estella L. Morris ("Dr. Morris"), a decades long employee with the Department of Veterans Affairs ("VA"), sued the department, alleging race discrimination in violation of Title VII of the Civil Rights Act of 1964. The VA filed a motion for summary judgment, and the district court granted it. This is an appeal of part of the district court's order granting the VA's motion for summary judgment.

## Statement Regarding Oral Argument

The facts and arguments of this case can be adequately presented in the briefs and in the record. If, however, the Court determines that oral argument would aid its decision making process, Dr. Morris requests fifteen minutes of argument.

Appellate Case: 23-3548    Page: 2    Date Filed: 03/27/2024 Entry ID: 5377466

# Table of Contents

Summary of the Case ........................................................... i

Statement Regarding Oral Argument .............................................. i

Table of Authorities ........................................................ iv

Jurisdictional Statement .................................................... 1

Statement of the Issues ..................................................... 2

Statement of the Case ....................................................... 4

Summary of the Argument..................................................... 13

Argument.................................................................... 17

    1.  The district court erred when it dismissed Dr. Morris's failure to promote claim regarding the Chief of Social Worker Services position because a reasonable juror could conclude that the VA's admitted failure to follow the veteran's preference pass over process was a pretext for racial discrimination .....................17

        Standard of Review ............................................... 18

    2.  The district court erred when it dismissed Dr. Morris's disparate treatment claim regarding the Chief of Social Worker Services position because the denial of an employment opportunity because of race is an adverse employment action even if that denial is not accompanied by a loss in compensation or benefits ........................................................... 27

    3.  The district court erred when it dismissed Dr. Morris's retaliation claim regarding her not being promoted to a GS-14 position because one, her not receiving the promotion is an

Appellate Case: 23-3548    Page: 3    Date Filed: 03/27/2024 Entry ID: 5377466

adverse employment action, and two, a reasonable juror could conclude that Mr. Ballard sabotaged her application because she filed multiple employment discrimination complaints.......... 33

Conclusion.......................................................................... 38

Certificate of Compliance with Type Volume Limitation, Typeface Requirements, and Type Style Requirements................................ 40

Certificate of Service ...................................................... 42

iii

Appellate Case: 23-3548    Page: 4    Date Filed: 03/27/2024 Entry ID: 5377466

## Table of Authorities

### Cases

*Allen v. Cty. of Montgomery*, 788 F.2d 1485 (11th Cir. 1986) ..............15

*Anderson v. Durham D & M, L.L.C.*, 606 F.3d 513 (8th Cir. 2010)....... ...................................................................................................... 22

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986)....... 18, 19, 20, 28

*Austin v. Minn. Mining & Mfg. Co.*, 193 F.3d 992 (8th Cir. 1999) ..... 21

*Bell v. Kansas City Police Dep't*, 635 F.3d 346 (8th Cir. 2011)........... 18

*Bennett v. Nucor Corp.*, 656 F.3d 802 (8th Cir. 2011) ....................... 21

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)......................................19

*Ferrill v. Parker Grp., Inc.*, 168 F.3d 468 (11th Cir. 1999) ................... ...........................................................3, 4, 17, 18, 25, 26, 27, 38, 39

*Gacek v. Owens & Minor Distrib., Inc.*, 666 F.3d 1142 (8th Cir. 2012)... ...................................................................................................... 34

*Gibson v. Am. Greetings Corp.*, 670 F.3d 844 (8th Cir. 2012) ...... 22, 28

*Goodman v. Lukens Steel Co.*, 482 U.S. 656 (1987)..................... 26, 28

*Henning v. Mainstreet Bank*, 538 F.3d 975 (8th Cir. 2008) ............... 18

*Hishon v. King & Spaulding*, 467 U.S. 69 (1984) .........................30, 36

*Jackson v. United Parcel Serv.*, 643 F.3d 1081 (8th Cir. 2011) ..... 22, 28

Appellate Case: 23-3548     Page: 5     Date Filed: 03/27/2024 Entry ID: 5377466

*Keefe v. City of Minneapolis*, 785 F.3d 1216 (8th Cir. 2015) .............. 34

*Kim v. Nash Finch Co.*, 123 F.3d 1046, 1062-1063 (8th Cir. 1997)..... 26

*Kline v. Tenn. Valley Auth.*, 128 F.3d 337 (6th Cir. 1997) ................. 20

*Lake v. Yellow Transp., Inc.*, 596 F.3d 871 (8th Cir. 2010)................ 28

*McDonald v. Santa Fe Trail Transp. Co.*, 427 U.S. 273 (1976) .......... 21

*McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) ............. 20, 27

*Mathewson v. Nat'l Automatic Tool Co.*, 807 F.2d 87 (7th Cir. 1986) .....
.................................................................................................15

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986) .
................................................................................................ 18

*Nyari v. Napolitano*, 562 F.3d 916 (8th Cir. 2009)............................ 18

*Patterson v. UPMC S. Hills Health Sys. Home Health LP*, No. 03-90,
2005 WL 6720844 (W.D. Pa. May 15, 2005)......................................
.......................................................... 3, 4, 29, 30, 36, 38, 39

*Riordan v. Kempiners*, 831 F.2d 690 (7th Cir. 1987) ...........................15

*Sanders v. Lee Cty. Sch. Dist. No.1*, 669 F.3d 888 (8th Cir. 2012) ........
.................................................................. 3, 4, 29, 35, 38, 39

*Smith v. URS Corp.*, 803 F.3d 964, (8th Cir. 2015) .............................
..................................................................3, 25, 26, 27, 37, 38

*Sullivan v. Little Hunting Park, Inc.*, 396 U.S. 229 (1969)................ 34

v

*The Civil Rights Cases*, 109 U.S. 3 (1883) ........................................ 21

*Wells Fargo Home Mortg., Inc. v. Lindquist*, 592 F.3d 838 (8th Cir. 2010) ................................................................................. 18, 38

*Williams v. Beaumont Health Sys.*, No. No. 18-12522, 2019 WL 4017187, (E.D. Mich. Aug. 26, 2019) .............................. 3, 4, 18, 29, 35, 36, 39

## Statutes

5 U.S.C. § 3318(c)(1) .......................................... 3, 17, 23, 24, 25, 38

28 U.S.C. § 1291 ............................................................................. 1

28 U.S.C. § 1331 ............................................................................. 2

38 U.S.C. § 7401(3) ............................................... 3, 17, 23, 24, 38

42 U.S.C. § 1981 ........................................................................... 26

42 U.S.C. § 1981(a) ...................................................................... 21

42 U.S.C. §§ 2000e-2(a)(1) .......................................................... 21

42 U.S.C. §§ 2000e-2(a)(2) ............................................................ 1

42 U.S.C. §§ 2000e-3(a) ................................................................. 1

## Rules

8th Cir. R. 28A(h)(1) .................................................................... 40

8th Cir. R. 28A(h)(2) .................................................................... 40

8th Cir. R. 28A(h)(3) .................................................................... 40

Fed. R. App. P. 25(d)(1)(B) .......................................................... 42

Appellate Case: 23-3548    Page: 7    Date Filed: 03/27/2024 Entry ID: 5377466

Fed. R. App. P. 25(d)(2) ................................................................. 42

Fed. R. App. P. 32(a)(5)(A) ............................................................ 40

Fed. R. App. P. 32(a)(6) ................................................................. 40

Fed. R. App. P. 32(a)(7)(B)(i) ........................................................ 40

Fed. R. App. P. 32(f) ...................................................................... 40

Fed. R. Civ. P. 56(e)(3) .................................................................. 19

Appellate Case: 23-3548     Page: 8     Date Filed: 03/27/2024 Entry ID: 5377466

## Jurisdictional Statement

On May 13, 2021 and October 4, 2022, Dr. Morris filed lawsuits against the VA, alleging race discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e-2(a)(2), 2000e-3(a).[1] She filed her two cases in the United States District Court for the Eastern District of Arkansas, and the district court consolidated them.

The district court had subject matter jurisdiction under 28 U.S.C. § 1331 because the cause of action arose under the laws of the United States, specifically, Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e-2(a)(2), 2000e-3(a).

On August 23, 2023, the VA filed a motion for summary judgment, and on October 23, 2023, the district court granted it. Dr. Morris filed a timely notice of appeal on November 20, 2023.

This Court has jurisdiction under 28 U.S.C. § 1291, which vests United States circuit courts with jurisdiction to hear appeals from final

---

[1] She also asserted claims of sex discrimination and age discrimination, however, she is abandoning those claims in this appeal.

1

decisions of United States district courts. This appeal is from a final judgment that disposes of all of Dr. Morris's claims.

2

## Statement of the Issues

The district court erred when it dismissed Dr. Morris's failure to promote claim regarding the Chief of Social Worker Services position because a reasonable juror could conclude that the VA's admitted failure to follow the veteran's preference pass over process was a pretext for racial discrimination. *Smith v. URS Corp.*, 803 F.3d 964, 965-972 (8th Cir. 2015); *Ferrill v. Parker Grp., Inc.*, 168 F.3d 468, 472-473 (11th Cir. 1999); 5 U.S.C. § 3318(c)(1); 38 U.S.C. § 7401(3).

The district court erred when it dismissed Dr. Morris's disparate treatment claim regarding the Chief of Social Worker Services position because the denial of an employment opportunity because of race is an adverse employment action even if that denial is not accompanied by a loss in compensation or benefits. *Sanders v. Lee Cty. Sch. Dist. No.1*, 669 F.3d 888, 893-894 (8th Cir. 2012); *Ferrill v. Parker Grp., Inc.*, 168 F.3d 468, 472-473 (11th Cir. 1999); *Williams v. Beaumont Health Sys.*, No. No. 18-12522, 2019 WL 4017187, at *4-5 (E.D. Mich. Aug. 26, 2019); *Patterson v. UPMC S. Hills Health Sys. Home Health LP*, No. 03-90, 2005 WL 6720844, at *6-10 (W.D. Pa. May 15, 2005).

3

The district court erred when it dismissed Dr. Morris's retaliation claim regarding her not being promoted to a GS-14 position because one, her not receiving the promotion is an adverse employment action, and two, a reasonable juror could conclude that Mr. Ballard sabotaged her application because she filed multiple employment discrimination complaints. *Sanders v. Lee Cty. Sch. Dist. No.1*, 669 F.3d 888, 893-894 (8th Cir. 2012); *Ferrill v. Parker Grp., Inc.*, 168 F.3d 468, 472-473 (11th Cir. 1999); *Williams v. Beaumont Health Sys.*, No. No. 18-12522, 2019 WL 4017187, at *4-5 (E.D. Mich. Aug. 26, 2019); *Patterson v. UPMC S. Hills Health Sys. Home Health LP*, No. 03-90, 2005 WL 6720844, at *6-10 (W.D. Pa. May 15, 2005).

4

## Statement of the Case

Dr. Morris started working for the Central Arkansas Veterans Healthcare System ("CAVHS"), which is part of the VA, in 1981. (App. 1196; R. Doc. 39, at 1). In 1983, after completing basic training, she joined the Arkansas National Guard and served for seven years. (App. 1196; R. Doc. 39, at 1). In 1987, after earning a Master of Social Work degree, she was promoted to Program Manager for the CAVHS Comprehensive Homeless Center ("Homeless Center"). (App. 1196; R. Doc. 39, at 1).

In 1991, she joined the Naval Reserve and served three years. (App. 1196; R. Doc. 39, at 1). During her active duty service period, she incurred a service connected disability and currently has a disability rating of 100%. (App. 1196; R. Doc. 39, at 1). In 2003, Dr. Morris earned a Doctor of Philosophy degree in Social Work. (App. 1196; R. Doc. 39, at 1).

In 2012, Diane Pettus ("Ms. Pettus"), a member of Dr. Morris's staff, contacted Catina McClain ("Dr. McClain"), Acting Chief of Staff of Mental Health Service, and accused Lynn Hemphill ("Mr. Hemphill"), the Supervisor of the Homeless Center, of fostering a

5

hostile work environment in the Homeless Center. (App. 555-556, 1197; R. Doc. 31-11; R. Doc. 39, at 2). Ms. Pettus neither named nor mentioned Dr. Morris in her complaint to Dr. McClain. (App. 1197-1198; R. Doc. 39, at 1-2).

On November 29, 2012, Dr. McClain issued a memorandum to Dr. Morris and Mr. Hemphill, setting forth Ms. Pettus's allegations. (App. 555-556, 1197; R. Doc. 31-11; R. Doc. 39, at 2). Dr. McClain requested that Dr. Morris and Mr. Hemphill respond to the allegations, and in the meantime, the two of them were detailed to another area in the organization, and some of their supervisory duties were temporarily revoked. (App. 555-556, 1197; R. Doc. 31-11; R. Doc. 39, at 2).

On December 17, 2012, Dr. Morris and Mr. Hemphill responded to Ms. Pettus's allegations and stated their belief that the fact finding process was motivated by a desire to move the two of them out of the management structure of the Homeless Program. (App. 557-576, 1197; R. Doc. 31-12; R. Doc. 39, at 2). Ultimately, Ms. Pettus's allegations were deemed unsubstantiated, neither Dr. Morris nor Mr. Hemphill were subjected to any disciplinary action, and they both returned to their positions in January 2013. (App. 1198; R. Doc. 39, at 2).

6

Notwithstanding the finding that Ms. Pettus's allegations were unsubstantiated, Dr. McClain directed Lisa Martone ("Ms. Martone"), a member of the Mental Health Executive Leadership Team, to monitor Dr. Morris's area and report back what she observed. (App. 878, 1198; R. Doc. 31-30, at 12; R. Doc. 39, at 2). Dr. Morris considered this move a usurpation of her authority as Program Manager of the Homeless Center. (App. 1198; R. Doc. 39, at 2). Ms. Martone spent time in the Homeless Center during a period when the Homeless Center was relocating to a more prominent facility. (App. 1198-1199; R. Doc. 39, at 2-3).

Dr. Morris played a significant role in planning and designing the relocation, and she believed Dr. McClain sent Ms. Martone to oversee her area in an effort to move her and Mr. Hemphill out of the management structure of the Homeless Program once the relocation was complete. (App. 1198-1199; R. Doc. 39, at 2-3). In late 2012 or early 2013, Dr. Morris lodged an informal equal employment opportunity complaint against Dr. McClain for detailing her out of her regular work area in connection with Ms. Pettus's unsubstantiated hostile work environment claim. (App. 1109-1114, 1199; R. Doc. 31-45, at 6-11; R.

Appellate Case: 23-3548    Page: 15    Date Filed: 03/27/2024 Entry ID: 5377466

Doc. 39, at 4). In February 2013, Dr. Morris filed an informal complaint alleging that Ms. Martone's monitoring of her area created a hostile work environment. (App. 100-103, 1199; R. Doc. 24-1, at 17-20; R. Doc. 39, at 4).

On March 6, 2015, a vacancy arose for the position of Chief of Social Worker Services at CAVHS. (App. 163, 1199; R. Doc. 24-2, at 1; R. Doc. 39, at 4). The application period closed on March 18, 2015, and the applications were transmitted to Karen Scott ("Ms. Scott"), the person with the authority to make the hiring decision. (App. 129-136, 1199; R. Doc. 24-1, at 46-53;  R. Doc. 39, at 4).

Dr. Morris wanted the position, but she did not apply for it by the March 18, 2015 closing date because she felt it was futile to do so because in her view, Anne Wright ("Ms. Wright"), a white female CAVHS employee and an applicant for the position, was pre-selected for the position. (App. 130-132, 1199; R. Doc. 24-1, at 47-49;  R. Doc. 39, at 4). Despite her misgivings, on July 7, 2015, Dr. Morris sought and obtained a veteran's preference for the position and filed a belated application. (App. 129-136, 1199; R. Doc. 24-1, at 46-53;  R. Doc. 39, at 4).

Dr. Morris went through two rounds of interviews, and she and Ms. Wright were the top two candidates. (App. 134-136, 1199; R. Doc. 24-1, at 51-53; R. Doc. 39, at 4). On February 10, 2016, Ms. Scott sent an email announcing her selection of Ms. Wright for the position. (App. 698-703, 1200; R. Doc. 31-19; R. Doc. 31-20; R. Doc. 31-21; R. Doc. 39, at 5). Dr. McClain concurred with Ms. Scott's decision, and Ms. Wright became Chief of Social Worker Services at CAVHS effective October 2, 2016. (App. 698-700, 863, 1200; R. Doc. 31-19; R. Doc. 31-27; R. Doc. 39, at 5).

On January 5, 2017, Dr. Morris filed a formal complaint of discrimination with the VA, alleging that choosing Ms. Wright rather than her for the position of Chief of Social Worker Services at CAVHS constituted racial discrimination and "reprisal" for her previous equal employment opportunity complaints. (App. 265, 1200; R. Doc. 31-1; R. Doc. 39, at 5).

On May 14, 2019, Michael Ballard ("Mr. Ballard"), Acting Chief of Staff for Mental Health and Dr. Morris's supervisor, sent her a memorandum notifying her that because of an investigation and report regarding the operations of the Homeless Center, he was detailing

9

Robin Atkins ("Ms. Atkins"), Deputy Chief of Physical Medicine and Rehabilitation Services, to the Homeless Center for at least ninety days to observe how the Homeless Center operated on a daily basis and to report her findings to him. (App. 865-866, 1201; R. Doc. 31-29; R. Doc. 39, at 6). Mr. Ballard also temporarily revoked Dr. Morris's "selection authority." (App. 865-866, 1201; R. Doc. 31-29; R. Doc. 39, at 6). On June 16, 2019, Dr. Morris filed a complaint of discrimination, alleging that Mr. Ballard's revocation of her selection authority and his detailing of Ms. Atkins to oversee her area were racially discriminatory. (App. 548-549, 1201-102; R. Doc. 31-9; R. Doc. 39, at 6-7).

On September 10, 2019, an opportunity for social workers to receive a pay upgrade was made available because of a change in the qualification standards, and Mr. Ballard submitted a request for Dr. Morris to receive this upgrade. (App. 1041-1043, 1202; R. Doc. 31-40; R. Doc. 39, at 7). According to Dr. Morris, Mr. Ballard made errors in the "functional statement" portion of the submission, and without an accurate functional statement, her submission would be rejected. (App. 148-153, 1202; R. Doc. 24-1, at 65-70; R. Doc. 39, at 7). Dr. Morris said she informed Mr. Ballard of the errors, but he did nothing to correct

10

them, and after waiting six months for him to correct them, she corrected them herself, and he submitted the request on March 23, 2021. (App. 148-153, 1202; R. Doc. 24-1, at 65-70; R. Doc. 39, at 7).

On April 5, 2021, Dr. Morris received written notice that she would not be upgraded to GS 14. (App. 1041-1043, 1202; R. Doc. 31-40; R. Doc. 39, at 7). The notice said in part

> The position does not meet the complexity (sic) according to the qualification standards…given the small program size and lack of complexity[,] this position does not meet the GS-14 criteria.

(App. 1041-1043, 1202; R. Doc. 31-40; R. Doc. 39, at 7).

As far as Dr. Morris was concerned, however, statements Mr. Ballard made in the request and his failure to accurately complete the functional statement sabotaged her opportunity for the upgrade. (App. 148-153, 1202; R. Doc. 24-1, at 65-70; R. Doc. 39, at 7).

On August 26, 2021, Dr. Morris filed a complaint of discrimination, alleging that Mr. Ballard failed to secure a promotion for her to a GS 14 pay level for racially discriminatory reasons. (App. 548-549, 1201-1202; R. Doc. 31-9; R. Doc. 39, at 6-7). She included in her complaint the fact that Mr. Ballard said the only reason he gave her

11

favorable performance reviews was because he was afraid she would file a discrimination complaint if he did not. (App. 143-147, 929, 947, 1201-1202; R. Doc. 24-1, at 60-64; R. Doc. 31-32, at 18, 36; R. Doc. 39, at 6-7).

On May 13, 2021, Dr. Morris sued the VA, alleging violations of Title VII of the Civil Rights Act of 1964 for racially discriminatory failure to promote, disparate treatment based on race, and a racially hostile work environment. (App. 5-18, 1202; R. Doc. 1; R. Doc. 39, at 7). On October 4, 2022, she filed an additional lawsuit against the VA that was consolidated with the May 13, 2021 case. (App. 1201, R. Doc. 39, at 7).

On August 23, 2023, the VA filed a motion for summary judgment on each of Dr. Morris's claims, and on October 23, 2023, the district court entered an order granting the VA's motion in its entirety. (App. 73-230, 1196-1217; R. Doc. 23; R. Doc. 24; R. Doc. 24-1; R. Doc. 24-2; R. Doc. 25; R. Doc. 39; R. Doc. 40; R. Doc. 41). In this appeal, Dr. Morris is not contesting the district court's dismissal of her failure to promote her to GS-14 claim, her age discrimination claim, and her hostile work environment claim. (App. 1207-1208, 1210-1211; R. Doc.

12

39, at 12-13, 15-16). She is, however, contesting the district court's dismissal of her failure to promote her to the Chief of Social Worker Services claim, her racial disparate treatment claim with respect to the Chief of Social Worker Services position, and her retaliation claim with respect to her request to be updated to a GS-14 position. (App. 1203-1210, 1212-1215; R. Doc. 39, at 8-15, 17-20).

Appellate Case: 23-3548    Page: 21    Date Filed: 03/27/2024 Entry ID: 5377466

## Summary of the Argument

Getting past a defendant's motion for summary judgment in an employment discrimination case is exceedingly difficult when the plaintiff's theory of recovery is disparate treatment on the basis of race. United States Circuit Judge Richard Posner offered a few reasons why:

> Proof of [intentional discrimination in employment] is always difficult. Defendants of even minimal sophistication will neither admit discriminatory animus nor leave a paper trail demonstrating it; and because most employment decisions involve an element of discretion, alternative hypotheses (including that of simple mistake) will always be possible and often plausible. Only the very best workers are completely satisfactory, and they are not likely to be discriminated against [because] the cost of discrimination is too great.

> The law tries to protect average and even below-average workers against being treated more harshly than would be the case if they were of a different race, sex, religion, or national origin, but it has difficulty achieving this goal because it is so easy to concoct a plausible reason for not hiring, or firing, or failing to promote, or denying a pay raise to, a worker who is not superlative. A plaintiff's ability to prove discrimination indirectly [or] circumstantially must not be crippled by

14

> evidentiary rulings that keep out probative
> evidence because of crabbed notions of
> relevance or excessive mistrust of juries.

*Riordan v. Kempiners*, 831 F.2d 690, 697-698 (7th Cir. 1987) (citing

*Mathewson v. Nat'l Automatic Tool Co.*, 807 F.2d 87, 91 (7th Cir. 1986);

*Allen v. Cty. of Montgomery*, 788 F.2d 1485, 1488 (11th Cir. 1986)).

In this case, the district court "…crippled…" Dr. Morris's "…ability to prove discrimination indirectly [or] circumstantially…" by one, misapprehending what constitutes an adverse employment action, and two, viewing the evidence in the light most favorable to the moving party, the VA.

The district court thinks an adverse employment action requires a "'change[] in pay, benefits, seniority, or responsibility.'" The district court is wrong. The district court also thinks that a supervisor's admission that he evaluated a subordinate's performance in the way he did solely because he was afraid the subordinate might exercise her rights under federal anti-discrimination law cannot be deemed evidence of discrimination or a retaliatory motive. The district court is wrong here too.

15

At bottom, the district court erred when it dismissed Dr. Morris's failure to promote claim regarding the Chief of Social Worker Services position because a reasonable juror could conclude that the VA's admitted failure to follow the veteran's preference pass over process was a pretext for racial discrimination.

It erred when it dismissed Dr. Morris's disparate treatment claim regarding the Chief of Social Worker Services position because the denial of an employment opportunity because of race is an adverse employment action even if that denial is not accompanied by a loss in compensation or benefits.

And it erred when it dismissed Dr. Morris's retaliation claim regarding her not being promoted to a GS-14 position because one, her not receiving the promotion is an adverse employment action, and two, a reasonable juror could conclude that Mr. Ballard sabotaged her application because she filed multiple employment discrimination complaints.

Based on the foregoing, this Court should reverse the district court's order granting the VA's summary judgment motion and remand this case for further proceedings.

16

## Argument

**1. The district court erred when it dismissed Dr. Morris's failure to promote claim regarding the Chief of Social Worker Services position because a reasonable juror could conclude that the VA's admitted failure to follow the veteran's preference pass over process was a pretext for racial discrimination.**

In dismissing Dr. Morris's failure to promote claim regarding the Chief of Social Worker Service position, the district court said she did not cite any authority to support her argument that the VA's admitted failure to abide by the veteran's preference was evidence of pretext, and it said that even if the VA interpreted the veteran's preference procedures incorrectly, Dr. Morris did not present any evidence that the VA's misinterpretation was based on racial animus. (App. 1206; R. Doc. 39, at 11).

The district court erred on both fronts. One, Dr. Morris did cite authority to support her veteran's preference argument, and two, the law does not require her to prove that the VA acted because of racial "animus." (App. 718-719, 723-726, 728-732, 735-736, 846-856; R. Doc. 31-22, at 14-16, 19-20, 25-29, 32-33; R. Doc. 31-25, at 1-11); 5 U.S.C. § 3318(c)(1); 38 U.S.C. § 7401(3); *Ferrill v. Parker Grp., Inc.*, 168 F.3d

17

468, 472-473 (11th Cir. 1999); *Williams v. Beaumont Health Sys.*, No. No. 18-12522, 2019 WL 4017187, at \*4-5 (E.D. Mich. Aug. 26, 2019).

**Standard of Review.**

Summary judgment is appropriate when, viewing the record in the light most favorable to the nonmoving party, there are no genuine issues of material fact, and the moving party is entitled to judgment as a matter of law. *Wells Fargo Home Mortg., Inc. v. Lindquist*, 592 F.3d 838, 842 (8th Cir. 2010) (quoting *Henning v. Mainstreet Bank*, 538 F.3d 975, 978 (8th Cir. 2008)).

In ruling on a motion for summary judgment, courts are required to draw all reasonable inferences in favor of the non-moving party, and they are prohibited from weighing the evidence or making credibility determinations. *Bell v. Kansas City Police Dep't*, 635 F.3d 346, 347 (8th Cir. 2011) (citing *Nyari v. Napolitano*, 562 F.3d 916, 922 (8th Cir. 2009)). The evidence and inferences drawn from that evidence must be viewed in the light most favorable to the non-moving party. *Anderson v. Liberty Lobby*, *Inc.*, 477 U.S. 242, 249 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

18

A party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). To satisfy this burden, the movant must either submit evidentiary documents that negate the existence of some material element of the non-moving party's claims or defenses or, if the issue is one for which the non-moving party bears the burden of proof at trial, point out that the evidentiary record contains insufficient proof concerning an essential element of the moving party's claims. *Celotex*, 477 U.S. at 325.

The non-moving party must present affirmative evidence in order to defeat a properly supported motion for summary judgment. *Anderson v. Liberty Lobby*, *Inc.*, 477 U.S. 242, 257 (1986). The non-moving party may not rest upon the allegations or denials of its pleadings, but its response, by affidavits or otherwise, must set forth specific facts showing that there is a genuine issue for trial; if it does not so respond, summary judgment, if appropriate, shall be entered against it. Fed. R. Civ. P. 56(e)(3).

Appellate Case: 23-3548    Page: 27    Date Filed: 03/27/2024 Entry ID: 5377466

The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-248 (1986). The dispute about a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson*, 477 U.S. at 247-248.

It is rare in an employment discrimination case that the plaintiff has direct evidence of the defendant's intent to discriminate. *Kline v. Tenn. Valley Auth.*, 128 F.3d 337, 348 (6th Cir. 1997) ("Rarely can discriminatory intent be ascertained through direct evidence because rarely is such evidence available."). In most cases, the plaintiff has to rely on circumstantial or indirect evidence to prove her case, and this is one of those cases.

In cases like this one, where direct evidence of intentional discrimination is lacking, the plaintiff has to establish a prima facie case of discrimination using the burden shifting framework the Supreme Court set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-803 (1973). In Title VII failure to promote claims, the plaintiff has to

20

demonstrate that: (1) she is a member of a protected group;[2] (2) she applied for promotion to a position for which the employer was seeking applicants and for which he was qualified; (3) she was not promoted; and (4) a similarly situated employee who did not belong to the protected group was promoted instead. *Bennett v. Nucor Corp.*, 656 F.3d 802, 819-820 (8th Cir. 2011) (citing *Austin v. Minn. Mining & Mfg. Co.*, 193 F.3d 992, 995 (8th Cir. 1999)).

---

[2] Title VII prohibits disparate treatment based on race, and its protections apply to *all persons*, regardless of their race. 42 U.S.C. §§ 2000e-2(a)(1), (2); 42 U.S.C. § 1981(a). *McDonald v. Santa Fe Trail Transp. Co.*, 427 U.S. 273, 295-296 (1976). Title VII also prohibits discrimination based on color, religion, sex, and national origin. 42 U.S.C. §§ 2000e-2(a)(1), (2). Although the Title VII case law used phrases such as "protected classes" or "protected groups," *everyone* is part of a protected class or a protected group everyone has a race (though some posit that race is dubious as a biological matter).

It would be more accurate to say that a person asserting a claim under Title VII must base his or her claim on a category that Title VII covers, i.e., race, color, religion, sex, or national origin. Using the phrases "protected class" or "protected group" perpetuates the divisive and false notion that black persons are the "special favorites of the law" to the detriment of white persons. *The Civil Rights Cases*, 109 U.S. 3, 61 (1883) (Harlan, J., dissenting) (the Civil War Amendments and Civil Rights Acts of 1875 did not make blacks the special favorite of the laws, but instead sought to accomplish for blacks what every state in the Union had done for whites, i.e., to secure and protect their rights as free persons and citizens; nothing more.).

If the plaintiff succeeds in establishing a prima facie case, the defendant may rebut the prima facie case by articulating a legitimate non-discriminatory reason for its action. *Gibson v. Am. Greetings Corp.*, 670 F.3d 844, 854 (8th Cir. 2012) (quoting *Jackson v. United Parcel Serv.*, 643 F.3d 1081, 1086 (8th Cir. 2011)). If the defendant articulates such a reason, the plaintiff must prove that the defendant's proffered reason was a pretext for discrimination, which the plaintiff can do by adducing enough admissible evidence to raise a genuine doubt as to the legitimacy of the defendant's motive. *Gibson*, 670 F.3d at 854 (quoting *Jackson*, 643 F.3d at 1086; *Anderson v. Durham D & M, L.L.C.*, 606 F.3d 513, 521 (8th Cir. 2010)).

Dr. Morris alleged that the VA failed to promote her to the Chief of Social Worker Services because of her race.[3] (App. 1203-1204; R. Doc. 39, at 8-9). The district court correctly found that she is a "member of a protected group," she was qualified for the position, the VA did not promote her to the position, and Ms. Wright, a white female, got the promotion instead. (App. 1203-1204; R. Doc. 39, at 8-9).

---

[3] She also based this claim on age and sex, but she is not pressing those claims in this appeal.

Appellate Case: 23-3548     Page: 30     Date Filed: 03/27/2024 Entry ID: 5377466

Part of Dr. Morris's proof that the VA discriminated against her on the basis of race consisted of the VA's admission that she is a disabled veteran, there is a statutory preference disabled veterans are entitled to when they seek social worker positions, and the VA did not follow the procedures for passing over a disabled veteran in favor of a person like Ms. Wright, who is not a disabled veteran. (App. 718-719, 723-726, 728-732, 735-736, 846-856; R. Doc. 31-22, at 14-16, 19-20, 25-29, 32-33; R. Doc. 31-25, at 1-11).

The district court is wrong to say that Dr. Morris did not cite any authority to support her veteran's preference argument. (App. 1206; R. Doc. 39, at 11). She repeatedly cited 5 U.S.C. § 3318(c)(1) and 38 U.S.C. § 7401(3). (App. 718-719, 723-726, 728-732, 735-736, 846-856; R. Doc. 31-22, at 14-16, 19-20, 25-29, 32-33; R. Doc. 31-25, at 1-11).

Section 3318(c)(1) of Title 5 of the United States Code sets forth the procedures the VA is supposed to follow when it "…proposes to pass over a preference eligible…in order to select an individual who is not a preference eligible…" Section 7401(3) of the United States Code identifies social workers as persons to whom the veteran's preference applies.

Appellate Case: 23-3548    Page: 31    Date Filed: 03/27/2024 Entry ID: 5377466

The VA admitted that it had actual knowledge of 5 U.S.C. § 3318(c)(1) and 38 U.S.C. § 7401(3), that it had actual knowledge that Dr. Morris was entitled to a veteran's preference and that Ms. Wright was not, and that it intentionally disregarded the procedures set forth in 5 U.S.C. § 3318(c)(1) when it passed over Dr. Morris and selected Ms. Wright. (App. 718-719, 723-726, 728-732, 735-736, 846-856; R. Doc. 31-22, at 14-16, 19-20, 25-29, 32-33; R. Doc. 31-25, at 1-11).

The VA responded to these admissions by citing a letter that it claims exempted the veteran's preference pass over requirements from the selection of the Chief of Social Worker Services. (App. 164-165, 182-208, 1206; R. Doc. 24-2, at 2-3, 20-46). The district court faced dueling interpretations of 38 U.S.C. § 7401(3), and instead of doing its own statutory analysis to see whether the VA or Dr. Morris had the better interpretation, it sided with the VA and its reliance on a "letter" that is not even law. (App. 1206; R. Doc. 39, at 11).

In fact, the district court did not even cite, let alone analyze, 5 U.S.C. § 3318(c)(1) or 38 U.S.C. § 7401(3). (App. 1206; R. Doc. 39, at 11). This is not how a court is supposed to resolve a dispute in a summary judgment posture, particularly when the dispute involves a

24

question of statutory interpretation. It is supposed to do its own interpretive work, and it is supposed to resolve all doubts and inferences in favor of the non-moving party, not the moving party. *Smith v. URS Corp.*, 803 F.3d 964, 968-972 (8th Cir. 2015) (the summary judgment record must be viewed in the light most favorable to the non-moving party).

This, however, is not the only error the district court made regarding Dr. Morris's claim that the VA failed to promote her to the Chief of Social Worker Services position. The district court implicitly acknowledged that the VA might have misinterpreted 5 U.S.C. § 3318(c)(1), but concluded that even if the VA did misinterpret the statute, it does not matter because Dr. Morris did not prove the misinterpretation stemmed from racial "animus." (App. 1206; R. Doc. 39, at 11).

A Title VII plaintiff does not have to prove the defendant acted with racial "animus," rather, she has to prove the defendant discriminated against her on the basis of race; put another way, racial "animus" and racial "discrimination" are not synonymous. *Ferrill v. Parker Grp. Inc.*, 168 F.3d 468, 472-473 n.7 (11th Cir. 1999) (Racial

25

animus and intent to discriminate are not synonymous. Proof of "animus," which means ill will, enmity, or hostility, is not a prerequisite of intentional discrimination.).

To the extent the district court required Dr. Morris to prove the VA acted with racial animus, the district court committed reversible error. *Ferrill v. Parker Grp. Inc.*, 168 F.3d 468, 472-473 n.7 (11th Cir. 1999) (citing *Goodman v. Lukens Steel Co.*, 482 U.S. 656, 668-669 (1987)) (liability for intentional discrimination under [42 U.S.C.] § 1981 [4] requires only that decisions be premised on race, not that decisions be motivated by invidious hostility or animus).

If one views the record in this case in the light most favorable to Dr. Morris, one should conclude that a reasonable juror could find that the VA's intentional disregard of the veteran's preference coupled with its decision to hire Ms. Wright instead of Dr. Morris was a pretext for racial discrimination. *Smith v. URS Corp.*, 803 F.3d 964, 968-972 (8th

---

[4] 42 U.S.C. § 1981, which prohibits intentional race discrimination in contracting, is interpreted similarly to Title VII. *Kim v. Nash Finch Co.*, 123 F.3d 1046, 1062-1063 (8th Cir. 1997).

Appellate Case: 23-3548   Page: 34   Date Filed: 03/27/2024 Entry ID: 5377466

Cir. 2015); *Ferrill v. Parker Grp. Inc.*, 168 F.3d 468, 472-473 n.7 (11th Cir.

1999).

   **2.** **The district court erred when it dismissed Dr. Morris's disparate treatment claim regarding the Chief of Social Worker Services position because the denial of an employment opportunity because of race is an adverse employment action even if that denial is not accompanied by a loss in compensation or benefits.**

The district court dismissed Dr. Morris's racial disparate treatment claim regarding the Chief of Social Worker Services position because in its view, her not being named to that position was not an adverse employment action, and even if it was, she failed to adduce evidence from which one can infer race discrimination. (App. 1208-1210; R. Doc. 39, at 13-15). Again, the district court erred on both fronts.

Because Dr. Morris did not adduce direct evidence of racial disparate treatment, this Court has to evaluate her claim using the burden shifting analysis set forth in *McDonnell Douglas v. Green*, 411 U.S. 792, 802-803 (1973). This analysis requires a plaintiff pressing a claim of racial disparate treatment to establish a prima facie case of intentional discrimination, which in turn requires the plaintiff to prove:

(1) that she is a member of a protected class;[5] (2) that she met her employer's legitimate expectations; (3) that she suffered an adverse employment action; and (4) the circumstances give rise to an inference of discrimination. *Gibson v. Am. Greetings Corp.*, 670 F.3d 844, 853-854 (8th Cir. 2012) (citing *Lake v. Yellow Transp., Inc.*, 596 F.3d 871, 874 (8th Cir. 2010)).

If the plaintiff succeeds in establishing a prima facie case, the defendant may rebut the prima facie case by articulating a legitimate non-discriminatory reason for its action. *Gibson v. Am. Greetings Corp.*, 670 F.3d 844, 854 (8th Cir. 2012) (quoting *Jackson v. United Parcel Serv.*, 643 F.3d 1081, 1086 (8th Cir. 2011)). If the defendant articulates such a reason, the plaintiff must prove that the defendant's proffered reason was a pretext for discrimination, which the plaintiff can do by adducing enough admissible evidence to raise a genuine doubt as to the legitimacy of the defendant's motive. *Gibson*, 670 F.3d at 854 (quoting *Jackson*, 643 F.3d at 1086; *Anderson v. Durham D & M, L.L.C.*, 606 F.3d 513, 521 (8th Cir. 2010)).

---

[5] *See supra* note 2.

Appellate Case: 23-3548    Page: 36    Date Filed: 03/27/2024 Entry ID: 5377466

The Court made a finding that Dr. Morris not being named to the Chief of Social Worker Services position was not an adverse employment action because she did not suffer "…a material change in employment such as a change in salary, benefits, or responsibilities." (App. 1208-1209; R. Doc. 39, at 13-14). The district court erred here because of its crabbed and erroneous understanding of what an adverse employment action is under Title VII.

An adverse employment action can occur even if the action does not result in a monetary loss. *Sanders v. Lee Cty. Sch. Dist. No. 1*, 669 F.3d 888, 893-894 (8th Cir. 2012) (finding that changing a person's job title from "finance coordinator" to "food services assistant" was an adverse employment action even though the person did not suffer a diminution in pay or benefits, only a change in job duties); *Williams v. Beaumont Health Sys.*, No. No. 18-12522, 2019 WL 4017187, at *4-5 (E.D. Mich. Aug. 26, 2019) (a plaintiff can establish a prima facie case of racial disparate treatment without demonstrating a change in pay, benefits, job responsibilities, or job status because job assignments based on race are adverse employment actions because such assignments affect the terms and conditions of employment); *Patterson*

29

*v. UPMC S. Hills Health Sys. Home Health LP*, No. 03-90, 2005 WL 6720844, at *6-10 (W.D. Pa. May 15, 2005) (same).

Although Dr. Morris was not entitled as a matter of law to be named Chief of Social Worker Services, she was entitled as a matter of law to be considered for it on a non-discriminatory basis, and if she was not, that alone is an adverse employment action regardless of the fact that not being named to the position did not result in a "…change in salary, benefits, or responsibilities." *Hishon v. King & Spaulding*, 467 U.S. 69, 75 (1984) (a benefit that is part and parcel of the employment relationship may not be doled out in a discriminatory fashion, even if the employer would be free under the employment contract to not provide the benefit at all).

The district court likewise erred when it found that she did not present any evidence that permits an inference of race discrimination. (App. 1209-1210; R. Doc. 39, at 14-15). In order for Dr. Morris to apply for the position of Chief of Social Worker Services, she had to go through Mr. Ballard, whose relationship with her can best be described as fraught. (App. 918, 923, 948-950; R. Doc. 31-32, at 7, 11, 18, 36-38).

30

For one thing, Mr. Ballard was dishonest in how he evaluated Dr. Morris's annual performances. (App. 918, 923, 948-950; R. Doc. 31-32, at 7, 11, 18, 36-38). Instead of giving candid assessments of her performances, he artificially inflated them for one reason; he was scared she would file a claim of discrimination against him if he did not. (App. 918, 923, 948-950; R. Doc. 31-32, at 7, 11, 18, 36-38).

The district court gave short shrift to this undisputed material fact, finding

> …[Dr. Morris's] [equal employment opportunity] activity may have served to insulate her from lower performance ratings even though [Mr.] Ballard perceived that [Dr. Morris] lacked collegiality and the ability to appropriately interact with supervisors."

(App. 1214; R. Doc. 39, at 19).

This is a classic example of a district reading a summary judgment record in the light most favorable to the moving party instead of the non-moving party. If one wants to be charitable, one could interpret Mr. Ballard's dishonest evaluations in a light that reflects positively on Dr. Morris. On the other hand, when evaluating a summary judgment record in the proper fashion, one should be

suspicious of any supervisor admitting he was dishonest in evaluating a subordinate's work for fear of that subordinate exercising her rights under federal anti-discrimination law. Mr. Ballard admitted his evaluation decisions were animated by Dr. Morris's "...EEO activity...," therefore, a jury should have been presented with this evidence to decide for itself whether it evidenced an intent to discriminate against Dr. Morris for insisting that she not be discriminated against on the basis of race. There is, however, more evidence that Mr. Ballard discriminated against Dr. Morris.

On September 10, 2019, an opportunity for social workers to receive a pay upgrade was made available because of a change in the qualification standards, and Mr. Ballard submitted a request for Dr. Morris to receive this upgrade. (App. 1041-1043, 1202; R. Doc. 31-40; R. Doc. 39, at 7). But Mr. Ballard made errors in the "functional statement" portion of the submission, and without an accurate functional statement, her submission would be rejected. (App. 148-153, 1202; R. Doc. 24-1, at 65-70; R. Doc. 39, at 7).

Dr. Morris informed Mr. Ballard of the errors, but he did nothing to correct them, and after waiting six months for him to correct them,

32

she corrected them herself, and he submitted the request on March 23, 2021. (App. 148-153, 1202; R. Doc. 24-1, at 65-70; R. Doc. 39, at 7). On April 5, 2021, Dr. Morris received written notice that she would not be upgraded to GS 14. (App. 1041-1043, 1202; R. Doc. 31-40; R. Doc. 39, at 7). The notice said in part

> The position does not meet the complexity (sic) according to the qualification standards…given the small program size and lack of complexity[,] this position does not meet the GS-14 criteria.

(App. 1041-1043, 1202; R. Doc. 31-40; R. Doc. 39, at 7).

Viewed in the light most favorable to Dr. Morris, a reasonable juror could find that Mr. Ballard botching the functional statement coupled with his refusal to correct it for six months after Dr. Morris brought his errors to his attention was a successful attempt to sabotage her opportunity for the upgrade. (App. 148-153, 1202; R. Doc. 24-1, at 65-70; R. Doc. 39, at 7).

**3. The district court erred when it dismissed Dr. Morris's retaliation claim regarding her not being promoted to a GS-14 position because one, her not receiving the promotion is an adverse employment action, and two, a reasonable juror could conclude that Mr. Ballard sabotaged her application**

33

**because she filed multiple employment discrimination complaints.**

The district court dismissed Dr. Morris's claim that the VA rejected her request to be upgraded to a GS-14 position in retaliation for her prior equal employment opportunity complaints, finding that one, her not receiving the position was not an adverse employment action, and two, Mr. Ballard's admission that his dishonest evaluation decisions were based on his fear that she would file a discrimination complaint against him was not evidence from which one could infer a retaliatory motive. (App. 1212-1214; R. Doc. 17-19). Yet again, the district court's analysis missed the mark.

In order to establish a prima facie claim for retaliation, a plaintiff must demonstrate that: (1) she engaged in statutorily protected activity; (2) the defendant took an adverse employment action against her; and (3) there is a causal connection between the two events. *Keefe v. City of Minneapolis*, 785 F.3d 1216, 1224-1225 (8th Cir. 2015) (citing *Gacek v. Owens & Minor Distrib., Inc.*, 666 F.3d 1142, 1146 (8th Cir. 2012) (quoting *Sullivan v. Little Hunting Park, Inc.*, 396 U.S. 229, 237 (1969))).

No one can dispute that a GS-14 position pays more than a GS-13, and no one can dispute that when Dr. Morris sought the GS-14

34

position, she was a GS-13. (App. 154-155; R. Doc. 24-1, at 71-72). Despite this, the district court made a finding that Dr. Morris not being names to a GS-14 position was not an adverse employment action because she "…remain[ed] in her same position [a GS-13] [with] no evidence of 'changes in pay, benefits, seniority, or responsibility' that are the hallmarks of a retaliation claim." (App. 1213; R. Doc. 39, at 18). In other words, denying a person an increase in compensation is not an adverse employment action so long as the person keeps the same job she had at the same compensation level. This is truly baffling.

As Dr. Morris discussed earlier in this brief when addressing her failure to promote her to the position of Chief of Social Worker Services claim, an adverse employment action can occur even if the action does not result in a monetary loss. *Sanders v. Lee Cty. Sch. Dist. No. 1*, 669 F.3d 888, 893-894 (8th Cir. 2012) (finding that changing a person's job title from "finance coordinator" to "food services assistant" was an adverse employment action even though the person did not suffer a diminution in pay or benefits, only a change in job duties); *Williams v. Beaumont Health Sys.*, No. No. 18-12522, 2019 WL 4017187, at *4-5 (E.D. Mich. Aug. 26, 2019) (a plaintiff can establish a prima facie case

35

of racial disparate treatment without demonstrating a change in pay, benefits, job responsibilities, or job status because job assignments based on race are adverse employment actions because such assignments affect the terms and conditions of employment); *Patterson v. UPMC S. Hills Health Sys. Home Health LP*, No. 03-90, 2005 WL 6720844, at *6-10 (W.D. Pa. May 15, 2005) (same).

Although Dr. Morris was not entitled as a matter of law to be GS-14 position, she was entitled as a matter of law to be considered for it on a non-retaliatory basis, and if she was not, that alone is an adverse employment action regardless of the fact that not being named to the position did not result in "…changes in pay, benefits, seniority, or responsibility." *Hishon v. King & Spaulding*, 467 U.S. 69, 75 (1984) (a benefit that is part and parcel of the employment relationship may not be doled out in a discriminatory fashion, even if the employer would be free under the employment contract to not provide the benefit at all).

And then there is Mr. Ballard's admission that his dishonest evaluation decisions were based on his fear that she would file a discrimination complaint against him, and the district court's finding that this is not evidence from which one could infer a retaliatory motive.

(App. 918, 923, 948-950, 1212-1214; R. Doc. 31-32, at 7, 11, 18, 36-38; R. Doc. 39, at 17-19). Again, viewed in the light most favorable to the VA – the moving party – one could look at this evidence charitably and conclude "no harm, no foul." But that is not how the law of summary judgment works. Viewed in the light most favorable to Dr. Morris – the non-moving party – would could just as likely conclude that Mr. Ballard considered Dr. Morris to be a serial race discrimination complainant, and he would do anything to prevent her from filing yet another claim, including signing off on dishonest annual performance reviews. When a supervisor admits that a subordinate's past and potential future activity in seeking the protections of federal anti-discrimination law led him to make decisions regarding that subordinate's employment, the subordinate is entitled to have a jury decide if that constitutes circumstantial evidence of retaliation. *Smith v. URS Corp.*, 803 F.3d 964, 968-972 (8th Cir. 2015) (the summary judgment record must be viewed in the light most favorable to the non-moving party).

## Conclusion

The district court erred when it dismissed Dr. Morris's failure to promote claim regarding the Chief of Social Worker Services position because a reasonable juror could conclude that the VA's admitted failure to follow the veteran's preference pass over process was a pretext for racial discrimination. *Smith v. URS Corp.*, 803 F.3d 964, 965-972 (8th Cir. 2015); *Sanders v. Lee Cty. Sch. Dist. No.1*, 669 F.3d 888, 893-894 (8th Cir. 2012); 5 U.S.C. § 3318(c)(1); 38 U.S.C. § 7401(3).

The district court erred when it dismissed Dr. Morris's disparate treatment claim regarding the Chief of Social Worker Services position because the denial of an employment opportunity because of race is an adverse employment action even if that denial is not accompanied by a loss in compensation or benefits. *Sanders v. Lee Cty. Sch. Dist. No.1*, 669 F.3d 888, 893-894 (8th Cir. 2012); *Ferrill v. Parker Grp., Inc.*, 168 F.3d 468, 472-473 (11th Cir. 1999); *Williams v. Beaumont Health Sys.*, No. No. 18-12522, 2019 WL 4017187, at *4-5 (E.D. Mich. Aug. 26, 2019); *Patterson v. UPMC S. Hills Health Sys. Home Health LP*, No. 03-90, 2005 WL 6720844, at *6-10 (W.D. Pa. May 15, 2005).

38

Last, the district court erred when it dismissed Dr. Morris's retaliation claim regarding her not being promoted to a GS-14 position because one, her not receiving the promotion is an adverse employment action, and two, a reasonable juror could conclude that Mr. Ballard sabotaged her application because she filed multiple employment discrimination complaints. *Sanders v. Lee Cty. Sch. Dist. No.1*, 669 F.3d 888, 893-894 (8th Cir. 2012); *Ferrill v. Parker Grp., Inc.*, 168 F.3d 468, 472-473 (11th Cir. 1999); *Williams v. Beaumont Health Sys.*, No. No. 18-12522, 2019 WL 4017187, at *4-5 (E.D. Mich. Aug. 26, 2019); *Patterson v. UPMC S. Hills Health Sys. Home Health LP*, No. 03-90, 2005 WL 6720844, at *6-10 (W.D. Pa. May 15, 2005).

Based on the foregoing, this Court should reverse the district court's order granting the VA's summary judgment motion and remand this case for further proceedings.

Respectfully submitted,

/s/Terrence Cain
Terrence Cain

**Certificate of Compliance with Type Volume Limitation, Typeface Requirements, and Type Style Requirements**

1. This brief complies with the type volume limitation of Fed. R. App. P. 32(a)(7)(B)(i) because it contains 7,555 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

2. This brief complies with the typeface requirements of Fed. R. App. 32(a)(5)(A) and the type style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft® Word 2019 MSO (16.0.10408.20002) 64-bit. The font size is 14. The font name is Equity A.

3. This brief complies with 8th Cir. R. 28A(h)(1) because it is a single document file. It complies with 8th Cir. R. 28A(h)(2) because it has been scanned for viruses, and it is virus free. It complies with 8th Cir. R. 28A(h)(3) because it is in Portable Document Format (also known as PDF or Acrobat Format) and was generated by printing to PDF from the original word processing file so that the text of the electronic version may be searched and copied.

40

<u>/s/Terrence Cain</u>
Terrence Cain

Attorney for the Appellant, Estella L. Morris

Dated: March 25, 2024

Appellate Case: 23-3548    Page: 49    Date Filed: 03/27/2024 Entry ID: 5377466

## Certificate of Service[*]

I hereby certify that on March 25, 2024, I electronically filed this APPELLANT'S BRIEF with the Clerk of the Court for the United States Court of Appeals for the Eighth Circuit by using the CM/ECF system.

/s/Terrence Cain
Terrence Cain

---

[*] Once the Clerk of the Court notifies me that this brief has been approved, I will update this certificate to comply with Fed. R. App. P. 25(d)(1)(B) and Fed. R. App. P. 25(d)(2).

Appellate Case: 23-3548    Page: 50    Date Filed: 03/27/2024 Entry ID: 5377466