IN THE UNITED STATES COURT OF APPEALS
FOR THE EIGHTH CIRCUIT

_____

NO. 23-3548
CIVIL

_____

ESTELLA MORRIS,
Appellant,
v.
DEPARTMENT OF VETERANS AFFAIRS
DENIS McDONOUGH, SECRETARY
Appellee

_____

Appeal from the United States District Court
for the Eastern District of Arkansas

The Honorable James M. Moody, Jr.
United States District Judge

_____

BRIEF OF APPELLEE

_____

JONATHAN D. ROSS
United States Attorney
Eastern District of Arkansas

JAMIE GOSS DEMPSEY
Assistant U.S. Attorney
P. O. Box 1229
Little Rock, Arkansas 72203
501-340-2600

Attorneys for Appellee

# SUMMARY OF THE CASE

Estella Morris filed a complaint, an amended complaint, and a second complaint in a separate action against the Department of Veterans Affairs ("VA") alleging that she suffered discrimination, a hostile work environment, and retaliation. The VA moved for summary judgment on all of Morris's claims, which was granted, and the district court entered judgment in favor of the VA.

Morris has appealed, arguing that the district court erred in granting summary judgment as to certain claims that she brought.

The VA respectfully asserts that oral argument is not necessary, as the issues raised in this appeal may be decided on the briefing. If this Court elects to hear oral argument, the VA respectfully requests that the parties be granted equal time.

Appellate Case: 23-3548    Page: 2    Date Filed: 05/31/2024 Entry ID: 5399544

# TABLE OF CONTENTS

SUMMARY OF THE CASE........................................................................i

TABLE OF CONTENTS........................................................................ ii

TABLE OF AUTHORITIES ................................................................. iii

JURISDICTIONAL STATEMENT ........................................................1

STATEMENT OF THE ISSUE................................................................2

STATEMENT OF THE CASE ................................................................3

SUMMARY OF THE ARGUMENT .....................................................11

ARGUMENT .........................................................................................15

CONCLUSION......................................................................................27

CERTIFICATION OF COMPLIANCE ...............................................28

CERTIFICATE OF SERVICE .............................................................29

Appellate Case: 23-3548    Page: 3    Date Filed: 05/31/2024 Entry ID: 5399544

# TABLE OF AUTHORITIES

**CASES**                                                                         **PAGE(S)**

*AuBuchon v. Geithner*, 743 F.3d 638 (8th Cir. 2014) .........................................2, 22

*Bonomo v. Boeing Co.*, 63 F.4th 736 (8th Cir. 2023) .................................2, 17, 18

*Brown v. Dep't of Veterans Affs.*, 247 F.3d 1222 (Fed. Cir. 2001) .......................19

*Carter v. Atrium Hosp.*, 997 F.3d 803 (8th Cir. 2021) .......................................2, 16

*E.E.O.C. v. City of Independence, Mo.,* 471 F.3d 891 (8th Cir. 2006) .................15

*Gibson v. Geithner*, 776 F.3d 536 (8th Cir. 2015) .................................2, 21, 24, 25

*Gustafson v. Bi-State Dev. Agency of Missouri-Illinois Metro. District*, 29 F.4th 406 (8th Cir. 2022) .........................................................................................26

*Kerner v. Dep't of the Interior*, 778 F.3d 1336 (Fed. Cir. 2015) ..........................19

*Lewis v. St. Cloud State Univ.,* 467 F.3d 1133 (8th Cir. 2006) .............................15

*Logan v. Liberty Healthcare Corp.*, 416 F.3d 877 (8th Cir. 2005) .......................23

*McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) ...................................15

*Nelson v. USAble Mut. Ins. Co.*, 918 F.3d 990 (8th Cir. 2019) ............................16

*Putman v. Unity Health Sys.*, 348 F.3d 732 (8th Cir. 2003) .................................16

*Ramlet v. E.F. Johnson Co.*, 507 F.3d 1149 (8th Cir. 2007) .................................15

*Rossley v. Drake Univ.*, 979 F.3d 1184 (8th Cir. 2020) .......................................26

*Strate v. Midwest Bankcentre, Inc.*, 398 F.3d 1011 (8th Cir. 2005) .....................25

*Wages v. Stuart Mgmt. Corp.*, 798 F.3d 675 (8th Cir. 2015) .................................26

iii

**STATUTES**

5 U.S.C. § 3318(c)(1) ...............................................................17

28 U.S.C. § 1291 .........................................................................1

28 U.S.C. § 1331 .........................................................................1

38 U.S.C. § 7401(3) ...................................................................17

42 U.S.C. § 2000e-16 ..................................................................1

**CODE OF FEDERAL REGULATIONS**

5 C.F.R. § 211.102(6) ................................................................19

**OTHER AUTHORITY**

ANIMUS, Black's Law Dictionary (11th ed. 2019) .............................19

Appellate Case: 23-3548    Page: 5    Date Filed: 05/31/2024 Entry ID: 5399544

## JURISDICTIONAL STATEMENT

The district court had jurisdiction under 28 U.S.C. § 1331, which grants district courts jurisdiction of all civil claims arising under the laws of the United States. Morris's Amended Complaint and Second Complaint sought monetary damages for her employment discrimination claims arising under 42 U.S.C. § 2000e-16. The district court entered an order granting summary judgment and a separate judgment in favor of the VA on October 23, 2023. On October 25, 2023, the district court entered an amended judgment in favor of the VA nunc pro tunc to October 23, 2023. Morris filed a timely notice of appeal on November 20, 2023. This Court has jurisdiction over this appeal under 28 U.S.C. § 1291.

1

## STATEMENT OF THE ISSUE

I.    THE DISTRICT COURT PROPERLY GRANTED SUMMARY JUDGMENT ON MORRIS'S FAILURE-TO-PROMOTE DISPARATE TREATMENT CLAIM

*Bonomo v. Boeing Co.*, 63 F.4th 736 (8th Cir. 2023)

*Carter v. Atrium Hosp.*, 997 F.3d 803 (8th Cir. 2021)

II.    THE DISTRICT COURT PROPERLY GRANTED SUMMARY JUDGMENT ON MORRIS'S RETALIATION CLAIM

*AuBuchon v. Geithner*, 743 F.3d 638 (8th Cir. 2014)

*Gibson v. Geithner*, 776 F.3d 536 (8th Cir. 2015)

Appellate Case: 23-3548    Page: 7    Date Filed: 05/31/2024 Entry ID: 5399544

## STATEMENT OF THE CASE

Morris started her employment at Central Arkansas Veterans Healthcare System ("CAVHS") in 1981 as a social work associate. (App. 77; R. Doc. 24, p. 3). She became a social worker in 1987, and at that time went into the Homeless Program as a social worker. *Id.* Morris subsequently became a supervisory social worker in the Homeless Program. *Id.* She was promoted to Grade 13 in 1995 or 1996, and she was promoted to Grade 13, Step 10 in 2006. *Id.*

Morris joined the Arkansas National Guard after going to work at CAVHS, serving in the National Guard for seven years and in the Navy Reserve for three years. (App. 1196; R. Doc. 39, p. 1). During her active-duty service she incurred a veteran service-connected disability. *Id.* In 2015, her disability rating was fifty percent, and she currently has a 100-percent disability rating. *Id.*

In 2012, a member of Morris's staff contacted Catina McClain, the Acting Chief of Staff of Mental Health Service with an allegation of a hostile work environment in the Homeless Center. (App. 1197; R. Doc. 39, p. 2). During an investigation into the allegation, Morris and another employee were relieved of their responsibility for approving leave or reviewing and assigning work in the day treatment program. *Id.* The allegation was ultimately found to be unsubstantiated, and Morris and the other employee were returned to their positions. (App. 1198; R.

3

Doc. 39, p. 3). Lisa Martone, a member of the Mental Health Executive Leadership Team, was detailed to the Homeless Program, and Morris felt that Martone usurped her role as Program Manager. *Id.* In late 2012 or early 2013, Morris filed an informal EEO complaint in connection with having been detailed out of her position. (App. 1199; R. Doc. 39, p. 4). She filed another informal EEO complaint in February 2013 based on specific interactions with Martone. *Id.*

On March 6, 2015, a vacancy was posted at CAVHS for a Chief of Social Work Service[1]. *Id.* The application period closed on March 18, 2015. *Id.* A list of qualified applicants was prepared and sent to the hiring official for the position, Karen Scott. *Id.* In July 2015, Morris applied for a ten-point veteran preference, which was granted, and she applied for the Chief of Social Work Service position more than five months after the application period had closed. *Id.*

Morris was granted a first-round interview based on her application, and she was selected to move forward to a second-round interview. *Id.* After the interviews were conducted, Morris and Anne Wright, who was also an employee at CAVHS, were the top two candidates. *Id.* Prior to going to work at CAVHS, Wright had been

---

[1] The position posted for which Morris applied was the Chief of Social Work Service position. (App. 7; R. Doc. 1, p. 3). However, in its order, the Court referred to the position as Chief of Social Worker Services. (App. 1199; R. Doc. 39, p. 4). The VA will refer to the position as Chief of Social Work Service in its brief.

4

the Director of Social Work Service at the University of Arkansas for Medical Sciences ("UAMS"). (App. 1200; R. Doc. 39, p. 5).

On February 10, 2016, Scott emailed administration officials with the applicants' scores from the applications and interviews and her recommendation. *Id.* She stated:

> I checked references on both Dr. Morris and Ms. Wright. Ms. Wright's references from UAMS as well as CAVHS were excellent. Dr. Morris'[s] references were good—she was identified as a leader in developing the Homeless Program for CAVHS, however, issues were identified with "micro-management" and at times difficulty with interpersonal skills when situations were not as she expected. Timeliness in responding to action items was identified as a concern.
>
> Overall, my recommendation is still for Michelle Wright. I believe Ms. Wright possesses the ability to lead Social Work Service, building a team within Social Work and with services that interact with Social Work. Ms. Wright has demonstrated experience in a complex teaching facility (UAMS) in leading the change that we need at CAVHS.

(App. 700; R. Doc. 31-19). The recipients of the email were Cyril Ekeh, McClain, and Margie Scott. (App. 698; R. Doc. 31-19). McClain responded that she concurred with Scott's recommendation. *Id.* Wright was selected as the Chief of Social Work Service. (App. 1200; R. Doc. 39, p. 5)

On January 5, 2017, Morris filed an official Complaint of Employment Discrimination with the VA, claiming that she was not selected for the position of Chief of Social Work Service based on her race and reprisal. (App. 1200; R. Doc.

39, p. 5). She also alleged that she had been subjected to a hostile work environment. *Id.*

Michael Ballard became Deputy Associate Chief of Staff for Mental Health Service in January 2017. (App. 918; R. Doc. 31-32, p. 6). In that position, he became Morris's direct supervisor. (App. 921; R. Doc. 31-32, p. 9). Shortly thereafter, he became Acting Associate Chief of Staff, and in that role, he was her first-line and second-line supervisor. *Id.* As her supervisor, Ballard conducted Morris's performance evaluations in 2017, 2018, 2019, and 2020. (App. 922; R. Doc. 31-32, p. 10). In May 2019, Morris received a memorandum from Ballard notifying her that, due to an Administrative Investigative Board related to Homeless Center Operations, the Deputy Chief of Physical Medicine and Rehabilitation Services would be detailed to the Homeless Center to submit reports to Ballard regarding daily operations. (App. 1201; R. Doc. 39, p. 6). The memorandum also stated that Morris's selecting official authority delegation was rescinded until further determination by Mental Health Leadership. *Id.* Morris filed another Complaint of Employment Discrimination claiming discrimination on the bases of race, color, age, reprisal, and disparate treatment. *Id.*

In 2019, a change in the qualification standards for social workers created an opportunity for Morris to have her position upgraded from a GS-13 to a GS-14.

6

(App. 81; R. Doc. 24, p. 7). In 2021, Ballard submitted a request for promotion on behalf of Morris based on the change in qualification standards. (App. 82; R. Doc. 24, p. 8). The request included a functional statement that was prepared by Morris and signed off on by Ballard and Michelle Wright. *Id.* While Ballard recommended her request be approved, Russel Hebert in the Human Resources Office recommended the request be disapproved. *Id.* Hebert provided the following justification for the denial:

> The position does not meet the complexity according to the qualification standards. Social Work program managers at the GS-14 grade are assigned to manage, direct, and oversee a major specialty program(s) at the facility, VISN, or VA Central office level and given the small program size and lack of complexity this position does not meet the GS-14 criteria.

*Id.*

In 2021, Morris filed a third Complaint of Employment Discrimination based on race, color, reprisal, age, gender, hostile work environment, and disparate treatment. (App. 1201; R. Doc. 39, p. 6). She alleged that Ballard intentionally failed to secure the promotion to GS-14 for her and that he had made statements to her attorney that he gave her outstanding performance evaluations because he was concerned that she would file an EEO complaint against him. (App. 1201-1202; R. Doc. 39, pp. 6-7).

7

Morris filed a complaint against the VA on May 13, 2021. (App. 5; R, Doc. 1). She filed an amended complaint on February 21, 2022. (App. 28; R. Doc. 7). On October 4, 2022, she filed a second complaint in another case. (Supp. App. 1; R. Doc. 1 in Case No. 4:22-CV-00956 (EDAR)). The district court consolidated the amended complaint and the second complaint into one action. (Supp. App. 22; R. Doc. 15, R. Doc. 19). In the complaints, Morris alleges that she suffered discrimination, and a hostile work environment based on her race, age, sex, and retaliation at various times from 2012 through 2021. She specifically alleged that she suffered discrimination when the VA failed to promote her to the position of Chief of Social Work Service and when the VA failed to promote her to a Grade 14 social worker in 2021.

The VA filed a motion for summary judgment and an accompanying brief in support on August 23, 2023. (App. 73, 209; R. Doc. 23, 25). Morris filed a response and brief in support in opposition to the motion, and the VA filed a reply to her response. (App. 231, 235, 1181; R. Doc. 30, 31, 35).

On October 23, 2023, the district court entered an order granting the VA's motion for summary judgment. (App. 1196; R. Doc. 39). Regarding Morris's claim that she was not selected for the position of Chief of Social Work Service in 2016 based on her race, the district court found that Morris had failed to present evidence

that the VA's proffered explanation for promoting Wright instead of her was pretextual. (App. 1206-1207; R. Doc. 39, pp. 11-12). Regarding the failure to promote claim based on the denied request for a promotion from GS-13 to GS-14, the district court found that Morris failed to provide any evidence that she was treated differently than an applicant for this promotion who was not a member of a protected group. (App. 1208; R. Doc. 39, p. 13). As to Morris's remaining claims of race discrimination, the district court found that Morris had not provided evidence that she suffered an adverse employment action and, even if she had, she had not presented any evidence that would permit an inference of race discrimination. (App. 1210, R. Doc. 39, p. 15). The district court also granted summary judgment in favor of the VA as to Morris's age discrimination and hostile work environment claims. (App. 1210-1211, R. Doc. 39, pp. 15-16).

With respect to her retaliation claims, the district court held that the 2012 factfinding did not amount to a retaliation claim because it was the subject of her EEO activity itself. (App. 1213; R. Doc. 39, p. 18). The district court held that the AIB investigation, temporary recission of hiring authority, and temporary placement of a supervisor were not adverse employment actions, so they did not provide any basis for a retaliation claim. *Id.* The failure to promote Morris to Chief of Social Work Service also did not support a retaliation claim because there was no causal

9

connection between Morris's 2013 EEO complaint and the 2016 nonselection. *Id.* The district court observed that the failure to promote Morris to GS-14 was not an adverse employment action; however, even if it were, there was no causal connection between Morris's protected activity and the failure to promote. (App. 1213-1214; R. Doc. 39, pp. 18-19).

The district court entered judgment in favor of the VA on October 23, 2023. (App. 1216; R. Doc. 40). On October 25, 2023, the district court entered an amended judgment in favor of the VA nunc pro tunc to October 23, 2023. (App. 1217; R. Doc. 41). Morris filed a timely notice of appeal on November 20, 2023. (App. 1218; R. Doc. 42).

## SUMMARY OF THE ARGUMENT

Morris argues that the district court erred in granting summary judgment as to her claim for failure to promote in connection with the Chief of Social Work Service position because what she terms as a failure by VA to follow the pass-over procedures for veterans' preference could be considered evidence that the VA's proffered nondiscriminatory reason for hiring another candidate was a pretext for discrimination. She is incorrect.

As the district court noted in its order, Morris failed to provide any authority to support her claim that a failure to follow the pass-over procedures could be evidence of pretext. The fact that the procedures were not applied in this case is not evidence of pretext because, pursuant to VA policy, veterans' preference does not apply to promotions, and, as Morris and the other candidate were both current employees of CAVHS, the position would be considered a promotion, not an initial appointment. Here, the VA followed an established procedure that applies to all employees.

Morris also claims that the district court may have inappropriately required her to prove racial animus, which she claims is not required in connection with the claim. While Morris refers to animus as a prejudicial disposition, another definition

11

of the term is intention. What the district court was saying in its order was that Morris had not provided any evidence that the VA's application of its policy and veterans' preference in this case was done with any intent based on race. No reasonable juror could conclude that the VA's application of the veterans' preference procedures in this case was evidence of pretext, and the district court properly granted summary judgment as to the claim.

Morris contends that the district court erred in denying her disparate treatment claim with regard to the Chief of Social Work Service position because not selecting her for the position was an adverse employment action and because there were facts that would permit an inference of discrimination. With respect to the Chief of Social Work Service claim, there is no separate disparate treatment claim from the failure-to-promote claim, so Morris's argument is moot.

Morris contends that the district court erred in dismissing her claim of retaliation regarding the unsuccessful GS-14 promotion because the denial was an adverse employment action and she presented evidence between her filing EEO complaints and the denial of the grade promotion. Even assuming the denial was an adverse employment action, there is no evidence of a causal connection between her filing EEO complaints and the denial. Morris points to actions by Michael Ballard she claims were intended to "sabotage" her request. Aside from the fact that Ballard

12

recommended that she be given the increase, he did not make the decision to deny the request, and there is no evidence that the person who denied the request was even aware of her EEO activity. In addition, there is no evidence that the actions Morris attributes to Ballard played any role in the denial. The denial was based on the conclusion that her position did not meet the requirements for GS-14 and, although Morris claims Ballard initially "botched" the functional statement in the request, the decision was made based on a functional statement Morris wrote herself. She also complains that he made other errors and delayed in submitting the request, but none of those things are implicated in the basis for denying the request.

Morris also claims that Ballard's statement to her attorney that he inflated her performance evaluations because he was concerned about reprisal from her through an EEO complaint is evidence of a causal connection. There is no evidence these assessments were part of the request for upgrade, and even if they were, the inflated assessments would have worked to Morris's benefit. Additionally, Ballard recommended granting the request, and Ballard did not make the decision to deny the request. Therefore, his actions regarding her performance evaluations are not evidence of a connection between the denial of her request and her EEO activity. Even if Morris could make a prima facie case, the VA has articulated a non-retaliatory reason for its denial of the GS-14 upgrade, and Morris lacks any evidence

13

to demonstrate pretext.

Morris failed to come forth with the necessary evidence to survive summary judgment on her claims, and the VA respectfully requests that the district court's judgment be affirmed.

Appellate Case: 23-3548    Page: 19    Date Filed: 05/31/2024 Entry ID: 5399544

## ARGUMENT

"This [C]ourt reviews the grant of summary judgment *de novo,* viewing the record in the light most favorable to the non-moving party." *Ramlet v. E.F. Johnson Co.*, 507 F.3d 1149, 1152 (8th Cir. 2007) (citing *Lewis v. St. Cloud State Univ.,* 467 F.3d 1133, 1135 (8th Cir. 2006). "Summary judgment is proper if the record shows 'that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Id.* (quoting *E.E.O.C. v. City of Independence, Mo.,* 471 F.3d 891, 894 (8th Cir. 2006)).

## I.   THE DISTRICT COURT PROPERLY GRANTED SUMMARY JUDGMENT ON MORRIS'S FAILURE-TO-PROMOTE DISPARATE TREATMENT CLAIM

For her first point on appeal, Morris challenges the district court's dismissal of her racial disparate treatment claim based on the VA's failure to promote her to the Chief of Social Work Service position. Morris does not contest the dismissal of the discrimination claim based on the VA's failure to promote her to GS-14, the dismissal of the age discrimination claim, or the dismissal of the hostile work environment claim. In analyzing the failure-to-promote disparate treatment claim, the district court applied the burden shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-804 (1973). "Under that familiar three-

15

step formula, plaintiff must first present a prima facie case of intentional discrimination." *Putman v. Unity Health Sys.*, 348 F.3d 732, 735 (8th Cir. 2003). "The burden then shifts to defendant to articulate a legitimate, nondiscriminatory reason for its action." *Id.* "If defendant meets that minimal burden, plaintiff must show that the proffered nondiscriminatory reason is merely a pretext for unlawful race discrimination." *Id.* "In the hiring context, a plaintiff seeking to prove race discrimination must make a prima facie showing that: (1) [s]he 'is in a protected class,' (2) [s]he 'was qualified for [the] position,' (3) [s]he 'was denied that position,' and (4) "[the employer] filled the position with a person not in the same protected class." *Carter v. Atrium Hosp.*, 997 F.3d 803, 809–10 (8th Cir. 2021) (quoting *Nelson v. USAble Mut. Ins. Co.*, 918 F.3d 990, 993 (8th Cir. 2019)).

Here, the district court found that Morris made the required prima facie showing. The district court also found that the VA articulated a legitimate nondiscriminatory reason for hiring Wright for the Chief of Social Work Service position, and Morris does not challenge those findings on appeal. The district court granted summary judgment on the claim based on its finding that Morris failed to provide any evidence that the proffered nondiscriminatory reason was merely a pretext for discrimination. Morris challenges this finding on appeal.

Morris contends that the district court erred in granting summary judgment on

16

the claim because the VA's "failure" to follow pass-over procedures for veterans' preference could be considered evidence that the VA's proffered reason was a pretext for racial discrimination. She also argues that the district court potentially required her to prove animus, which she asserts is not required.

Morris's argument lacks merit. She asserts that she cited authority to support her veterans' preference argument in that she cited 5 U.S.C. § 3318(c)(1), which sets out the pass-over procedure, and 38 U.S.C. § 7401(3), which grants the Secretary of the Department of Veterans Affairs the authority to appoint personnel to a number of listed positions, including social workers. However, what the district court stated in its order was that Morris had failed to provide evidence to support her claim that not following the procedures outlined in § 3318(c)(1) was evidence of pretext. Merely citing the statute that sets forth the pass-over procedures and the statute that permits the Secretary to appoint social workers does not support a claim of pretext. Morris also claims that the district court did not properly apply the summary-judgment standard in interpreting § 7401(3). However, the district court was not required to interpret that section in deciding the motion for summary judgment, and it did not do so.

In any event, the fact that the pass-over procedures were not utilized here is not evidence of pretext. In *Bonomo v. Boeing Co.*, 63 F.4th 736, 743 (8th Cir. 2023),

17

the plaintiff pointed to a certain policy of the employer that managers were encouraged to consider more than just an interview, and that this was not done in his case. While the Eighth Circuit recognized that this provision existed in the policy, there were also other provisions that put this provision into context and allowed a manager to only consider the interview. *Id.* Even considering the record in a light favorable to the plaintiff, the Eighth Circuit affirmed the district court holding that no reasonable factfinder could conclude the employer violated its own policies. *Id.* While the record must be construed in the light most favorable to the plaintiff, that does not require finding a contradiction between two provisions if the record as a whole could not sustain that conclusion.

Similarly, in this case, the pass-over procedures cited by Morris were not applicable. Both Morris and Wright were employees of CAVHS at the time they sought the position. Therefore, the position would be a promotion for them, not an initial appointment. The VA's internal policy, which was relied on by both Morris and the VA below, states that veterans' preference does not apply to promotions. As in *Bonomo*, no reasonable factfinder could conclude that the VA violated its own policies here, and Morris cannot meet her burden to demonstrate pretext.

Morris correctly points out that the policy is not law, but the issue here is not

18

whether the policy is rooted in law,[2] rather it is whether the VA following an established policy that applies to all employees regardless of their personal characteristics could be considered evidence of pretext. It cannot, particularly as there is no evidence that the policy was applied differently in this case in a manner that could give rise to an inference that the difference was based on race.

This is what the district court meant when it referred to "animus." Morris complains that the reference to animus meant that the district court improperly requires her to show "a prejudicial disposition toward a discernable . . . group of persons." ANIMUS, Black's Law Dictionary (11th ed. 2019) (defining the term "animus"). However, her argument overlooks the fact that this is not the only definition of the term "animus." Animus can also refer to intention. *See id.* The district court was not requiring Morris to show animus. Instead, it was saying that even if the VA did not apply the veterans preference procedures correctly, Morris presented no evidence that the VA acted with any race-based intent, which would be

---

[2] It appears that the policy is, in fact, rooted in law. *See* 5 C.F.R. § 211.102(6) ("Veterans' preference does not apply, however, to inservice placement actions such as promotions."); *Kerner v. Dep't of the Interior*, 778 F.3d 1336, 1338 (Fed. Cir. 2015) ("The text of the VEOA shows that it is intended to assist veterans in gaining access to federal civil service employment, not to give veterans preference in merit promotions."); *Brown v. Dep't of Veterans Affs.*, 247 F.3d 1222, 1225 (Fed. Cir. 2001) ("Neither the VPA nor VEVRAA accord veterans' preference for promotions and intra-agency transfers.").

Appellate Case: 23-3548   Page: 24   Date Filed: 05/31/2024 Entry ID: 5399544

necessary to show a pretext for racial discrimination- No reasonable juror could conclude that the VA's application of the veterans' preference procedures in this case was evidence of a pretext for racial discrimination. Accordingly, the VA respectfully requests that the district court's grant of summary judgment as to the claim of failure to promote in connection with the Chief of Social Work Service position be affirmed. In her brief, Morris separately addresses a disparate treatment claim related to the Chief of Social Work Service position. Aside from the failure-to-promote claim, there is no separate claim for disparate treatment based on Morris's nonselection for the Chief of Social Work Service position. As explained above, the district court treated the nonselection as an adverse employment action and properly held that Morris could not prove pretext as a matter of law. Therefore, Morris's argument regarding a separate disparate treatment claim for the Chief of Social Work Service position is moot.

Morris also claims that there was evidence that would permit an inference of discrimination because in order to apply for the position she "had to go through Mr. Ballard, whose relationship with her can best be described as fraught." *See* Appellant's Br. at p. 30. However, there is nothing in the record to indicate that Ballard was involved in the process of hiring the Chief of Social Work Service in any way. He was not one of the recipients of the email from Karen Scott that

contained her recommendation, nor is there any indication he was involved in the interview process. Ballard did not become Morris's supervisor until January 2017, and Wright was selected for the position in 2016. There is no evidence that Ballard had any involvement or even awareness of the application process for the Chief of Social Work Service position, so his performance evaluations from 2017 through 2020 could not provide any basis for a finding of pretext for the Chief of Social Work Service nonselection.

## II. THE DISTRICT COURT PROPERLY GRANTED SUMMARY JUDGMENT ON MORRIS'S RETALIATION CLAIM

Morris also challenges the district court's dismissal of her claim that she was retaliated against when her position was not promoted to GS-14. To establish a prima facie retaliation claim, Morris must show (1) that she "engaged in protected conduct; (2) a reasonable employee would have found the retaliatory action materially adverse; and (3) the materially adverse action was causally linked to protected conduct." *Gibson v. Geithner*, 776 F.3d 536, 540 (8th Cir. 2015). Here, Morris filed an informal EEO complaint in 2013, and she filed formal complaints in 2017, 2019, and 2021. The district court determined that the decision not to promote her to Chief of Social Work Service in 2016 was an adverse employment action. However, it determined there was no plausible causal connection between the complaint she

made in 2013 and the decision not to hire her for the position because they occurred three years apart. The district court found that the decision not to upgrade her position to GS-14 was not an adverse employment action, and, even if it were, there is no connection between the filing of the complaints and the decision. Morris does not appear to challenge this finding on appeal.

Morris argues that the district court erred in granting summary judgment on her claim of retaliation as to the denial of her request for a pay-grade increase to GS-14 because the denial was an adverse employment action and there is evidence of a connection between her activity and the denial. Failure to promote can be considered an adverse employment action to support a retaliation claim; however, the Eighth Circuit has never required an employer to "create a position to which the complaining party may be promoted." *See AuBuchon v. Geithner*, 743 F.3d 638, 643 (8th Cir. 2014). Here, Ballard recommended Morris for the GS-14 promotion; however, VA Human Resources determined her position did not meet the requirements for a GS-14 under the qualification standards. As in *AuBuchon*, there was not a promotional opportunity for Morris at the VA, so the denial of the grade increase was not an adverse employment action.

While the district court determined it did not find the denial of the GS-14 to be an adverse employment action, it went on to assume that the denial was an adverse

22

employment action, holding that Morris could not prove a causal connection between the protected conduct, the filing of the EEO complaints, and the adverse action, the denial of the GS-14 upgrade. The request was denied based on a determination that Morris's position did not qualify for GS-14. Morris does not challenge the basis for the denial on appeal. She contends that Ballard's actions in connection with the request, coupled with his admission that he inflated her performance evaluations due to her having filed several complaints, is evidence of a causal connection. Morris is incorrect.

Again, the decision to deny the request for a pay-grade increase was not made by Ballard. In fact, Ballard recommended granting the increase. The decision was made by Russel Hebert. As a result, it is Hebert's motive, not Ballard's, that is relevant here. *See Logan v. Liberty Healthcare Corp.*, 416 F.3d 877, 882 (8th Cir. 2005). And, as the district court noted in its order, there is no evidence to indicate that Hebert was even aware of Morris's filings with the EEO. There is certainly no evidence of any connection between Morris's filings and Hebert's decision.

Further, none of the actions by Ballard of which Morris complains played a role in the denial of the request. His admission regarding the performance evaluations is certainly not evidence of any connection, as Ballard's actions worked to Morris's benefit. Moreover, there is no evidence that performance evaluations

23

were considered in the decision not to upgrade her position. She also claims that he "sabotaged" her request. However, the decision regarding the increase was made based on a functional evaluation that Morris wrote herself. She alleges that Ballard incorrectly indicated that the increase was not funded, but the request was not denied on the basis of funding. She has also alleged that he incorrectly stated on the request that she had been performing her job duties for thirty years, but, as the district court noted, this statement was technically accurate. In addition, the request was denied based on the determination that her duties at the time did not meet the requirements for GS-14. Morris also claims that Ballard delayed submitting the request, but there is no indication that the timing of the request played any role in its denial. Morris failed to provide any evidence of a connection between her EEO claims and the denial of the request for an increase of her pay grade. Accordingly, the district court properly granted summary judgment as to the claim.

Even if this Court determines Morris could show a causal connection to make a prima facie case, the burden will then shift to the VA to articulate a legitimate, non-retaliatory reason for the adverse action. *See Gibson*, 776 F.3d at 540. As explained above, Ballard recommended Morris be promoted to GS-14 based on the change in qualification standards, but Hebert disapproved the request because he determined the position did not meet complexity requirements under the

24

qualification standards. Once the VA articulates its legitimate, non-retaliatory reason, the burden shifts back to Morris to provide evidence of pretext. *Id.* "Proof of pretext 'requires more substantial evidence' than a *prima facie* case 'because unlike evidence establishing a *prima facie* case, evidence of pretext ... [and retaliation] is viewed in light of the employer's justification.'" *Id.* (quoting *Logan*, 416 F.3d at 881 (alterations in original) (internal quotation marks omitted)). "There are at least two routes for demonstrating a material question of fact as to pretext: first, a plaintiff may succeed indirectly by showing the proffered explanation has no basis in fact; or, second, a plaintiff can directly persuade the court that a prohibited reason more likely motivated the employer." *Id.* "'Pretext . . . must be read as shorthand for indicating that a defendant's proffered [retaliatory] explanation for adverse employment action is a pretext for *unlawful [retaliation],* not that it is merely false in some way.'" *Id.* (quoting *Strate v. Midwest Bankcentre, Inc.*, 398 F.3d 1011, 1017 (8th Cir. 2005)). Morris attributes a retaliatory motive to Ballard; however, none of his actions factored into the denial of the request. Her claims that he "botched" the application—which included the functional statement she drafted—or that he was dishonest in performance evaluations that had no bearing on the GS-14 application are not sufficient to demonstrate pretext. Moreover, Ballard did not make the decision to deny the request, and Morris lacks any evidence that Hebert's decision

25

has no basis in fact or that it was motivated by a prohibited reason. Morris lacks any evidence to demonstrate that the decision not to upgrade her to GS-14 was pretext for unlawful retaliation, so her claim fails as a matter of law. This court "may affirm the district court's grant of summary judgment on any ground supported by the record." *Gustafson v. Bi-State Dev. Agency of Missouri-Illinois Metro. District*, 29 F.4th 406, 411 (8th Cir. 2022) (quoting *Rossley v. Drake Univ.*, 979 F.3d 1184, 1186 (8th Cir. 2020)); *see also Wages v. Stuart Mgmt. Corp.*, 798 F.3d 675, 679 (8th Cir. 2015) ("Even if not discussed by the district court, we may affirm on any ground supported by the record.").

Appellate Case: 23-3548      Page: 31      Date Filed: 05/31/2024 Entry ID: 5399544

## <u>CONCLUSION</u>

For the foregoing reasons and citations to authority, this Court should affirm the district court's order granting summary judgment and the resulting judgment in favor of the VA.

Respectfully submitted,

JONATHAN D. ROSS
United States Attorney


By: */s/ Jamie Goss Dempsey*
      Jamie Goss Dempsey
      Bar No. 2007239
      Assistant United States Attorney
      P.O. Box 1229
      Little Rock, Arkansas 72203
      (501) 340-2600
      Jamie.Dempsey@usdoj.gov

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT, TYPEFACE REQUIREMENTS, AND TYPE-STYLE REQUIREMENTS

1.      This document complies with the type-volume limit of Fed. R. App. P. 32(a)(7)(B), excluding the parts of the document exempted by Fed. R. App. P. 32(f), this document contains 5,565 words.

2.      This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word 2016 in size 14 in Times New Roman.

3.      This document has been scanned for viruses and is virus-free, in accordance with United States Court of Appeals for the Eighth Circuit Local Rule 28A(h).


*/s/ Jamie Goss Dempsey*
Jamie Goss Dempsey
Assistant U.S. Attorney
Bar Number 2007239
P.O. Box 1229
Little Rock, Arkansas 72203
(501)340-2600
Jamie.Dempsey@usdoj.gov

28

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed this brief for review on May 31, 2024.

*/s/ Jamie Goss Dempsey*
Jamie Goss Dempsey
Assistant U.S. Attorney
Bar Number 2007239
P.O. Box 1229
Little Rock, Arkansas 72203
(501)340-2600
Jamie.Dempsey@usdoj.gov

29